Tomasa PALACIOS, Plaintiff-Respondent,

v.

ABC TV & STEREO RENTAL OF MILWAUKEE, INC., a/k/a Colortyme TV Rental, Defendant-Appellant.†

Court of Appeals

*No. 84–506. Submitted on briefs December 10, 1984.—*
*Decided February 1, 1985.*
(Also reported in 365 N.W.2d 882.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Stupar, Gollin & Schuster, S.C.,* with *Herbert Levine, Esq.,* of counsel, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Legal Action of Wisconsin, Inc.,* with *Steven A. Taterka* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

SULLIVAN, J. ABC TV & Stereo Rental of Milwaukee, Inc., a/k/a Colortyme TV Rental (Colortyme), appeals from a summary judgment in favor of Tomasa

Palacios (Palacios) on her claim that Colortyme violated the Wisconsin Consumer Act[1] in an installment transaction involving a television. Colortyme contends the transaction was not a "consumer credit sale" under the act but only a rental agreement terminable at will. We conclude the transaction was a consumer credit sale within the meaning of sec. 421.301(9), Stats., and that the transaction violated the Wisconsin Consumer Act. We therefore affirm.

The material facts are undisputed. Palacios and Colortyme entered into a television-stereo "rental" agreement on February 7, 1979, providing that Palacios would receive the use and possession of a color television-stereo combination at a fee of $23 per week. The agreement further provided that Palacios had the option to purchase the television-stereo by making seventy-eight consecutive weekly installment payments. Hand-written in the upper left corner of the agreement was the notation, "18 MONTHS TO OWN," and the date on which ownership could be achieved, "8/7/80." The agreement also contained a termination clause allowing the renter to return the set at any time, with no further obligation than to make any payments due on or during the week of termination.

Palacios' children made approximately fifteen weekly payments; thereafter, Palacios made the weekly payments  It is undisputed that Palacios and her children made at least $1,652 in payments. The estimated retail value of the television-stereo on the date the parties entered into the agreement was $800.

Palacios ceased to make payments and refused to return the set. She then filed a complaint against Colortyme alleging that the so-called rental transaction constituted a consumer credit sale under sec. 421.301(9), Stats., and that Colortyme violated the following provi-

[1] Chs. 421–427, Stats.

sions of the Wisconsin Consumer Act: secs. 422.301 and 422.303(1), Stats., requiring disclosure of, *inter alia,* the amount of the finance charge imposed; sec. 422.303(3), requiring a "Notice to Customer" disclosure to appear on the agreement; sec. 422.405, Stats., prohibiting an authorization in the agreement to confess judgment; sec. 422.419(1)(a) and (b), Stats., prohibiting a waiver in the agreement authorizing the merchant to enter the customer's dwelling to take possession of the property upon default and further waiving any right of action against the merchant that may accrue from the repossession; and sec. 422.203(1), Stats., prohibiting agreement to a delinquency charge exceeding three percent of the amount of an unpaid installment. Palacios further alleged that the transaction was unconscionable in violation of sec. 425.107(3)(a)–(h), Stats. As a second alternative cause of action, Palacios alleged comparable violations of the Wisconsin Consumer Act under the theory that the transaction was a "consumer lease" within the meaning of sec. 421.301(11), Stats. Finally, Palacios alleged, as a third alternative cause of action, that the agreement was unconscionable under common law and the Uniform Commercial Code.

On December 21, 1982, the trial court granted Palacios' motion for summary judgment, concluding as a matter of law that the transaction constituted a consumer credit sale under the Wisconsin Consumer Act. The summary judgment was interlocutory, with no finding made as to the amount of liability. After transfer of the case to another judge, the parties stipulated in writing to a liquidated amount of damages and penalties. This sum was reduced to judgment with the proviso that Colortyme would have the right to appeal the issue of its liability under the Wisconsin Consumer Act. It was agreed that the stipulated damages and penalties would stand if the liability issue were affirmed on appeal.

Colortyme presents two alternative arguments on this appeal: (1) the subject transaction was not covered by the Wisconsin Consumer Act and the action must be dismissed, or (2) at the very least, there are material issues of fact in dispute such that summary judgment was inappropriate.

Summary judgment is appropriate where there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. Sec. 802.08(2), Stats. When called upon to review the granting or denial of a summary judgment, an appellate court applies the same standards, and in the same manner, as the trial court. *Heck & Paetow Claim Service, Inc. v. Heck*, 93 Wis. 2d 349, 356, 286 N.W.2d 831, 834 (1980). If the moving party has made a prima facie case for summary judgment, the court examines the affidavits and other proof of the opposing party to determine whether there are disputed material facts or undisputed material facts from which reasonable alternative inferences may be drawn sufficient to entitle the opposing party to a trial. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 477 (1980).

Whether a statutory concept embraces a particular set of factual circumstances presents a mixed question of fact and law. *See United Way, Inc. v. DILHR*, 105 Wis. 2d 447, 453–54, 313 N.W.2d 858, 861–62 (Ct. App. 1981). What sec. 421.301(9), Stats., means by "consumer credit sale," i.e., what elements it comprises, is a question of law; what the parties did presents questions of fact; and whether the elements of a "consumer credit sale" are present in the instant case is a question of law.

The trial court determined that no dispute existed as to any of the factual elements necessary for application of sec. 421.301(9), Stats. Before we can make the same

determination, we must address Colortyme's challenge to the trial court's interpretation of what elements comprise a consumer credit sale under sec. 421.301(9).

## CONSUMER CREDIT SALE

Section 421.301(9), Stats., defines a "consumer credit sale" as follows:

"Consumer credit sale" means a sale of goods, services or an interest in land to a customer on credit where the debt is payable in instalments or a finance charge is imposed and includes any agreement in the form of a bailment of goods or lease of goods or real property if the bailee or lessee pays or agrees to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the goods or real property involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the goods or real property upon full compliance with the terms of the agreement.

Any "consumer credit sale" is also a "consumer credit transaction" under sec. 421.301(10), Stats., and thus subject to the strictures of ch. 422, Stats., which regulates consumer credit transactions.

For purposes of this case, the salient language of sec. 421.301(9), Stats., is that pertaining to an agreement in the form of a "bailment" or "lease" of goods. That type of transaction constitutes a consumer credit sale if the bailee or lessee "pays or agrees to pay" an amount "substantially equivalent to or in excess of the . . . value of the goods," and the bailee or lessee "for no other or a nominal consideration has the option to become . . . the owner of the goods" upon full compliance with the agreement.

The trial court determined (1) that the instant agreement was in the form of a "lease of goods," (2) that

Palacios, in fact, paid an amount substantially in excess of the value of the goods, (3) that the amount was paid as compensation for use, and (4) that the agreement provided that Palacios would become the owner of the goods upon full compliance with the agreement. The trial court concluded that all requisite elements were present and that the instant transaction was a consumer credit sale.

The thrust of Colortyme's argument is that there is an additional element set forth in sec. 421.301(9), Stats., which is not present here—namely, that the customer be obligated under the agreement to make the installment payments. Colortyme submits that, in the absence of any obligation to make payments for an express period of time, a transaction such as the one in this case cannot be a consumer credit sale pursuant to sec. 421.301(9).

Colortyme argues that the federal Truth-in-Lending Act[2] and the Wisconsin Consumer Act are similar and that, therefore, cases under Truth-in-Lending are highly relevant. *See First Wisconsin National Bank v. Nicolaou,* 113 Wis. 2d 524, 531–32, 335 N.W.2d 390, 394 (1983). Colortyme ignores the crucial difference in language between the two acts and ignores, too, cases under Truth-in-Lending which run counter to its position.

The Truth-in-Lending Act defines a "credit sale" as one in which the customer "contracts to pay" a sum equivalent to, or exceeding, the value of the subject goods. 15 U.S.C. § 1602(g). Section 421.301(9), Stats., on the other hand, characterizes a transaction as a "consumer credit sale" if the customer "pays or agrees to pay" the equivalent of, or more than, the value of the goods. Thus, under the Wisconsin act, a transaction can be a credit sale where the customer agrees to pay the equivalent, or more, of the value of the goods *or* where the customer, in fact, *pays* the equivalent, or more,

---

[2] 15 U.S.C. § 1601 *et seq.*

of the value of the goods. The language of the section could not be plainer. There is no need to resort to extrinsic aids or even to the rule of liberal construction set forth in sec. 421.102(1), Stats.

Colortyme correctly points out that one of the underlying policies of the Wisconsin Consumer Act is to "coordinate the regulation of consumer credit transactions with the policies of the federal consumer credit protection act." Sec. 421.102(2)(d), Stats. However, there is a split of authority in case law interpreting the Truth-in-Lending Act as to whether "rental" agreements such as the one in this case are "credit sales" under the act. *Compare, e.g., Smith v. ABC Rental Systems,* 618 F2d 397 (5th Cir 1980) (per curiam) (affirming a district court holding that a television rent-to-own transaction did not constitute a credit sale), *with Clark v. Rent-It Corp.,* 685 F.2d 245 (8th Cir. 1982), *cert. denied,* 459 U.S. 1225 (1983) (holding that it was error to dismiss a consumer's complaint without giving him the opportunity to show that a rent-to-own transaction was a credit sale). *Compare, also, Stewart v. Remco Enterprises, Inc.,* 487 F. Supp. 361 (D. Neb. 1980) (holding that a television rent-to-own transaction was not a credit sale), *with Waldron v. Best T.V. & Stereo Rentals, Inc.,* 485 F. Supp. 718 (D. Md. 1979) (holding that a television rent-to-own transaction was a credit sale). Thus, we do not violate the underlying policy of "coordinat[ion]" with the federal act when we interpret the Wisconsin act to embrace transactions in which the customer has no contractual obligation to continue to make installment payments.

Likewise, the Maine and Maryland state court cases cited by Colortyme are inapposite. Both cases interpreted state statutes in which the definition of credit sale or installment sale was limited to transactions where the customer was contractually obligated to pay a sum

equaling or exceeding the value of the goods. *See Hawkes Television, Inc. v. Maine Bureau of Consumer Credit Protection,* 462 A.2d 1167 (Me. 1983) ; *State v. Action TV Rentals, Inc.,* 467 A.2d 1000 (Md. Ct. App. 1983).

Colortyme asserts that sec. 421.301(10), Stats., helps to clarify the meaning of sec. 421.301(9), and that the requirement of an "obligation" to make installment payments is expressed in the former subsection. Section 421.301(10) defines "consumer credit transaction," a term which includes "consumer credit sale." "[C]onsumer credit transaction" is defined as a consumer transaction between a merchant and customer in which real or personal property, services or money "is acquired on credit and the customer's obligation is payable in instalments or for which credit a finance charge is or may be imposed . . . ."

We do not agree that to bring a transaction which clearly falls under sub. (9) under the aegis of the consumer act, we must also separately rationalize it under the language of sub. (10). Subsection (10) expressly provides that a consumer credit sale is also a consumer credit transaction. Thus, a transaction which, for example, clearly contains all the elements of the bailment/lease variety of consumer credit sale, as expressed in sub. (9), is also a consumer credit transaction. The former is a species of the latter because the legislature so provided.

In any event, we have no difficulty placing the instant transaction in either category. Assuming, without deciding, that the word "obligation," as used in sub. (10), connotes a contractual duty or liability, a customer's "obligation" to make installment payments is still not a prerequisite to the existence of a consumer credit transaction. A consumer credit transaction also exists where property is acquired on credit, "for which credit a fi-

nance charge is or may be imposed." "Finance charge" is defined in sec. 421.301(20), Stats., as "the sum of all charges, payable directly or indirectly by the customer as an incident to or as a condition of the extension of credit . . . ." The term includes a "time price differential." Sec. 421.301(20)(a). In the instant transaction a time-price differential was built into the agreement. The time-price differential was the difference between the fair market value of the television-stereo and the amount which a consumer who made weekly payments over an eighteen month period would ultimately pay to Colortyme.

For all of the foregoing reasons, we conclude that sec. 421.301(9), Stats., defining a consumer credit sale, does not require that the customer be contractually obligated to make installment payments. In the context of a bailment or lease of goods, a consumer credit sale takes place where the bailee or lessee either agrees to pay or, in fact, pays as compensation for use a sum substantially equal to, or greater than, the value of the goods. We conclude that the trial court correctly analyzed the requirements of sec. 421.301(9). We reject Colortyme's argument that this action must be dismissed for "lack of coverage" under the Wisconsin Consumer Act.

We turn then to Colortyme's alternate argument that, because issues of fact exist, summary judgment was inappropriate. Colortyme asserts that a fact issue exists as to whether Palacios had any "obligation" to continue to rent the television-stereo. We have already determined that coverage under sec. 421.301(9), Stats., does not depend on the consumer's having been obligated to make installment payments. Colortyme's submitted affidavits denying that the transaction involved any obligation to make payments do not raise any material issue of fact.

Additionally, Colortyme argues that a factual issue is raised by the affidavit of Dan Chaudoir, Colortyme's collection manager. Chaudoir's legal conclusions concerning the difference between rental payments and installment payments do not raise any issues of fact.

Colortyme has shown no material issues of fact entitling it to a trial. We, therefore, reject its argument that summary judgment was inappropriate.

In summary, we conclude that the rent-to-own transaction between Palacios and Colortyme was a consumer credit sale within the meaning of sec. 421.301(9), Stats. We affirm the judgment of the trial court.

*By the Court.*—Judgment affirmed.