RENT-A-CENTER, INC., Plaintiff-Appellant,†

v.

Flora HALL, Defendant-Respondent.

Court of Appeals

No. 92–2650. *Oral argument October 21, 1993.—Decided December 21, 1993.*

(Also reported in 510 N.W.2d 789.)

†Petition to review denied.

243

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas L. Shriner, Jr.*, and *James M. Caragher* of *Foley & Lardner* of Milwaukee. There was oral argument by *Thomas L. Shriner, Jr.*

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Patricia M. Cavey, James A. Walrath*, and *James M. Brennan* of *Legal Aid Society of Milwaukee, Inc.*, of Milwaukee; and *Stephen E. Meili* of *Center for Public Representation, Inc.*, of

Madison. There was oral argument by *Jeffery R. Myer* of *Legal Action of Wisconsin* of Milwaukee.

Amicus Curiae brief was filed by *James E. Doyle*, attorney general, and *David J. Gilles*, assistant attorney general, for the Wisconsin Department of Justice and the Commissioner of Banking of the State of Wisconsin.

Amicus Curiae brief was filed by *Jeffery R. Myer* of *Legal Action of Wisconsin, Inc.*, of Milwaukee, and *Robert Hobbs* of *National Consumer Law Center, Inc.*, of Boston, Massachusetts, for Carolyn L. Boyd.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J. This is an appeal from a judgment dismissing a small-claims replevin action brought against Flora Hall by Rent-A-Center, Inc. After a bench trial, the trial court held that the transaction underlying the replevin action violated the Wisconsin Consumer Act, chapters 421 to 427 of the Wisconsin Statutes, *see* sec. 421.101, Stats. We affirm.[1]

## I.

Rent-A-Center rents appliances and other merchandise to customers who, generally, cannot afford to

---

[1] Amici briefs have been filed, in a consolidated submission, by the Wisconsin Department of Justice and the Office of Commissioner of Banking, and, separately, by Legal Action of Wisconsin, Inc., and National Consumer Law Center, Inc., on behalf of Carolyn L. Boyd. Boyd's motion for leave to file her brief characterizes her as "a low-income consumer who currently has a rent-to-own contract" with a company other than Rent-A-Center, but whose contract, according to her motion, is identical in all material respects to the Rent-A-Center's contract with Hall.

purchase the items when they are new. William A. Ritter, Jr., Rent-A-Center's zone manager for the company's seven stores on Milwaukee's north side, explained to the trial court that many of the company's customers "don't have an opportunity to own nice merchandise . . . [s]o their option is to either go without or to rent from Rent-A-Center."

On April 6, 1991, Hall signed a rental agreement and a lease disclosure statement with Rent-A-Center by which she agreed to rent a new washer and a new dryer for one month. The agreement was renewable, monthly, at Hall's option. The monthly payment expense was set at $77.96, exclusive of sales tax and a liability- waiver fee.[2] Her agreement with Rent-A-Center gave Hall the option to purchase the appliances after "19 months of successive renewals" at their "then fair market value" not to exceed $161.91, or a total, excluding tax and the liability-waiver fee, of no more than $1643.15.[3]

Hall stopped making monthly payments to Rent-A-Center in April of 1992, and her agreement terminated on May 6, 1992. According to Ritter's testimony, Hall told Rent-A-Center that she felt she had paid enough for the appliances.

---

[2] The lease disclosure statement listed the sales tax at $4.29 per month. There was also a liability-waiver fee, in return for which Rent-A-Center would not hold Hall liable if the property was damaged or lost because of fire, lightening, windstorm, flood, smoke, or theft. The liability-waiver fee was $5.35 per month, and was discontinued in October of 1991 at Hall's insistence. Her monthly payments, which had been $87.60 per month, fell to $82.25.

[3] The nineteen monthly payments, exclusive of tax and the liability-waiver fee, would have equalled $1,481.24.

Hall testified that she stopped paying rent in April of 1992 because she thought that she was only obligated to pay for twelve months in order to own the appliances. She related to the trial court what happened when she called Rent-A-Center to tell the company that she would pay no more:

> Then when I took all my receipts out and added up what I had paid I saw I had over paid. [sic] I had [paid] $1,069. I called the store and told them that I'm finished paying for the washer and dryer. They say oh, good, let me check. And so they checked their — no you're not. You supposed to pay for 21 months. And I said I never agreed to 21 months. I can't afford 21 months.[4]

Hall told the trial court that she needed the washer and dryer and "was renting to own, not just to rent." According to her calculations, twenty-one monthly payments would have equalled $1,839.60 even though, according to her testimony, a washer and dryer should cost no more than approximately $600. Although a paragraph of the lease disclosure statement indicates that the option to purchase can only be exercised after "19 months of successive renewals" (upper case and strikeouts omitted), a handwritten insertion above that entry reads: "+ 2 = 21 months." Ritter explained the insertion:

> The reason we do that is to help the customer understand the option to purchase. Typically they have, as I said earlier, there is a specified [sic] timeframe [sic] for them to continue making [monthly] renewal payments. At the end of that

---

[4] As will be seen, a Rent-A-Center employee explained to Hall that the option to purchase was the equivalent of two additional monthly payments.

timeframe [*sic*] they enter into an option to purchase. A lot of customers don't realize what that means. So we kind of simplify it by explaining to them that it's equivalent to two months worth of rental payments.

Hall's agreement with Rent-A-Center warned her that purchasing the property by renting it would be more expensive than purchasing the property outright from alternative sources:

**THIS IS A RENTAL AGREEMENT ONLY.** THIS AGREEMENT IS FOR RENTAL OF THE PROPERTY ONLY. YOU WON'T ACQUIRE ANY EQUITY IN THE PROPERTY BY MAKING RENTAL PAYMENTS. YOU HAVE NOT AGREED TO PURCHASE THIS PROPERTY, BUT YOU MAY CHOOSE TO PURCHASE IT IN THE FUTURE IF YOU MEET THE CONDITIONS OF THE OPTION. IF YOU WANT TO PURCHASE THIS OR SIMILAR PROPERTY NOW, YOU MAY BE ABLE TO GET CASH OR CREDIT TERMS FROM OTHER SOURCES WHICH WILL RESULT IN A LOWER TOTAL COST THAN THE RENTAL PAYMENTS. PLUS THE PURCHASE OPTION PRICE PROVIDED FOR ABOVE.

(Bolding, capitalization and underlining in original).[5]

---

[5] Hall testified that she never read the various forms she signed, although she acknowledged that some of the documents at least, or parts of them, were read to her. She also claimed that when she signed the documents they did not disclose that she would have to rent the appliances for nineteen months before being able to exercise the purchase option, and that the documents did not specify the total amount she would be paying. Although finding that Hall "could not read and did not understand the contract" when she signed the papers, the trial court made no findings as to whether the lease term or the total

■
The trial court concluded that Rent-A-Center's agreement was a consumer credit sale and was governed by, but did not comply with, the Wisconsin Consumer Act. Our review of the trial court's conclusion is *de novo. Palacios v. ABC TV & Stereo Rental*, 123 Wis. 2d 79, 83, 365 N.W.2d 882, 885 (Ct. App. 1985).

## II.

Rent-A-Center concedes that its agreement with Hall did not comply with the Wisconsin Consumer Act but argues that compliance was not required because its agreement with Hall was not a "consumer credit sale" subject to the Act. Accordingly, we must decide whether the agreement is governed by that Act. We conclude that it is.
■
A "consumer credit sale" is defined by the Wisconsin Consumer Act as a "sale of goods . . . to a customer on credit where the debt is payable in instalments [*sic*] . . . and includes any agreement in the form of a . . . lease of goods . . . if the . . . lessee pays or agrees to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the goods

---

payments had been added after Hall signed the documents. Each numbered paragraph on each of the documents has a companion box for customers to initial indicating that they read and understood the paragraph. Hall initialed all of the paragraphs. It is the "firmly fixed" law in this state that, absent fraud, a person may not avoid the clear terms of a signed contract by claiming that he or she did not read or understand the contract. *Knight & Bostwick v. Moore*, 203 Wis. 540, 542-543, 234 N.W. 902, 903 (1931); *see also Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 732-734, 456 N.W.2d 585, 588-590 (1990).

. . . involved and it is agreed that the . . . lessee will become, or for no other or a nominal consideration has the option to become, the owner of the goods . . . upon full compliance with the terms of the agreement." Section 421.301(9), Stats. A "consumer credit sale" as thus defined is subject to the Wisconsin Consumer Act. *Palacios*, 123 Wis. 2d at 84, 365 N.W.2d at 885.

For the purposes of this case, there are two prerequisites to the applicability of section 421.301(9), Stats., and, therefore, the Wisconsin Consumer Act, to the agreement between Rent-A-Center and Hall. First, Hall must have either paid or agreed to pay "a sum substantially equivalent to or in excess of the aggregate value of the goods." This is conceded by Rent-A-Center.[6] Second, the agreement must provide that Hall, as phrased by the subsection, "will become, or for no other or a nominal consideration has the option to become, the owner of the goods . . . upon full compliance with the terms of the agreement." This is not conceded by Rent-A-Center.

The trial court concluded that the agreement between Hall and Rent-A-Center gave Hall the option to own the appliance "for no other or a nominal consideration." It based this conclusion on two alternative rationales. First, the trial court determined that the handwritten notation on the lease disclosure statement that "+ 2 = 21 months" "appears to indicate that upon payment of 21 installments of rent Ms. Hall gained ownership" of the appliances without further payment. (Uppercase omitted.) If so, the agreement is a "consumer credit sale" and is governed by the Wiscon-

---

[6] At oral argument before the trial court, counsel for Rent-A-Center indicated that the company was "not disputing in this case that she paid the — that she paid the equivalent of the value of the goods."

sin Consumer Act. *See Palacios*, 123 Wis. 2d at 84, 365 N.W.2d at 885. Second, the trial court decided that if the agreement between Hall and Rent-A-Center "is interpreted to call for 19 installments of rent with an option to purchase at the conclusion of those payments," the $161.91 option payment was, in the context of the case, "nominal consideration."

The interpretation of a contract is a legal issue that we decide *de novo. See Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990). Contracts that are unambiguous must be enforced as they are written. *Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 38, 284 N.W.2d 692, 702-703 (Ct. App. 1979), *aff'd*, 100 Wis. 2d 120, 301 N.W.2d 201 (1981). Contractual language is ambiguous only when it is "reasonably or fairly susceptible of more than one construction." *Borchardt*, 156 Wis. 2d at 427, 456 N.W.2d at 656. Here, Hall's base monthly payment for the nineteen-month term was $77.96. Two additional months at this rate would have equalled $155.92, not $161.91. Adding in the sales tax of $4.29 for which she was responsible, results in a monthly payment of, as previously explained in footnote 2, $82.25. Accordingly, irrespective of whether Hall's monthly payments are calculated to include or exclude sales tax, the agreement did not permit Hall to become owner of the appliances in return for twenty-one payments of her monthly rent. Indeed, had Hall exercised the option by paying the $161.91 at the end of the "19 months of successive renewals," she would have owned the washer and dryer immediately—she would not have had to wait for the expiration of a twenty-one month period as implicitly assumed by the trial court. Our conclusion that Hall could not have become the owner of the appliances in

return for twenty-one monthly payments, however, does not end our analysis; the Wisconsin Consumer Act governs the transaction if the $161.91 payment is "nominal consideration." *See* sec. 421.301(9), Stats.

■ A trial court's findings of fact will not be overturned on appeal unless those findings are "clearly erroneous." Section 805.17(2), Stats. Here, the trial court found that Hall wanted to ultimately own the appliances, rather than to merely rent them for a term, and her testimony in that regard is uncontested. The trial court also found that if Hall had made all of the payments and exercised her option, her total cost for the appliances of $1,643.15, exclusive of sales tax and fees, would have been, according to Hall's uncontroverted testimony, approximately three times their retail price when new. The trial court concluded, alternatively, either (1) that after having made the nineteen monthly payments Hall would have had no sensible alternative but to pay the additional $161.91, and that, therefore, the cost of exercising the option was "nominal"; or (2) that the additional $161.91 was "nominal" because it permitted Hall to own the appliances for only 11% percent of the monthly rental-payment total of $1,481.

■ No Wisconsin case has decided whether the Hall/Rent-A-Center type of transaction is a lease, or a credit sale as defined by section 421.301(9), Stats. Under a provision similar to section 421.301(9) that appeared in the Uniform Commercial Code prior to a 1987 amendment, however, leases that were, functionally, credit sales were held to be "governed by the same rules that apply to other security interests." *See In re Marhoefer Packing Co.*, 674 F.2d 1139, 1142 (7th Cir.

1982).[7] Cutting through the form of a transaction to get to its substance is consistent with Wisconsin law. *See Bush v. National Sch. Studios*, 139 Wis. 2d 635, 651, 653, 655-656, 407 N.W.2d 883, 890, 891-893 (1987) (court must look at core of agreement). The Uniform Commercial Code clause provided:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

U.C.C. § 1-201(37) (1978); 1 U.L.A. 68-69 (1989).[8] Under the pre-1987 version of section 1-201(37), the general view was that whether an option payment was

---

[7] Purchases were often disguised as leases. *See Marhoefer*, 674 F.2d at 1145 (arrangement was a true lease because, among other reasons, "the total amount of rent Marhoefer was to pay under the lease was substantially less than" what Marhoefer would have had to pay if it had financed the purchase); *see also In re Fashion Optical, Ltd.*, 653 F.2d 1385, 1390 (10th Cir. 1981) (the excess of rental payments over the cost to purchase the property is "one factor tending to indicate interest payments in a financed installment sale").

[8] U.C.C. § 1-201(37) was amended in 1987 to provide, *inter alia*, that:

A transaction does not create a security interest merely because it provides that

(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,

(b)    the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,

(c)    the lessee has an option to renew the lease or to become the owner of the goods,

(d)    the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

(e)    the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

For purposes of this subsection (37):

(x)    Additional consideration is not nominal if (i) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised;. . . .

U.C.C. § 1-201(37); 1 U.L.A. 67-68 (1989). Wisconsin adopted this amendment, effective July 1, 1992. 1992 Wis. Act 148 §§ 23-24, 62. The amendment was part of the creation of a new chapter of the Uniform Commercial Code dealing with leases, Article 2A, and was designed to accommodate the needs of sophisticated merchants in light of what the Official Comment terms "the rather considerable change in the federal, state and local tax laws and accounting rules as they relate to leases of goods" over the years. 1 U.L.A. 73. Indeed, one court has opined that the "1987 version of 1-201(37) may well be appropriate for $500,000 draglines, $ 100,000 equipment, etc. but not for consumer rentals of small items of household goods." *In re Burton,* 128 B.R. 807, 815 (Bankr. N.D. Ala. 1989), *aff'd,* 128 B.R. 820 (N.D. Ala. 1989). Article 2A was adopted in Wisconsin by 1992

"nominal" did not depend merely on the payment's relationship to the goods' fair market value. *See National Equip. Rental, Ltd. v. Priority Elecs. Corp.*, 435 F. Supp. 236, 239 (E.D.N.Y. 1977) ("[T]he Code talks in terms of 'nominal consideration' regardless of whether the consideration represents the fair market value or not."). Among the other factors were: the relationship between the option price and the total rentals, *see id.*, 435 F. Supp. at 238 (citing cases); the relationship between the option price and the original price of the goods, *see FMA Financial Corp. v. Pro-Printers*, 590 P.2d 803, 805 & n.1 (Utah 1979) (citing cases); and whether the lessee has any sensible alternative to exercising the option, *see id.*, 590 P.2d at 806 & n.2 (citing cases).[9] Application of these factors, which are equally applicable here, leads us to conclude, as did the trial court, that the agreement between Hall and Rent-A-

---

Wis. Act 148 § 48, and appears in the Wisconsin Statutes as chapter 411. Although the legislature also modified the Wisconsin Consumer Act to bring it into conformity with the new Uniform Commercial Code chapter, *see* 1992 Wis. Act 148 §§ 49-55, it left intact the act's definition of "consumer credit sale." This indicates legislative intent not to narrow the broad reach of the consumer act. We reject the suggestion by Rent-A-Center that we should usurp the legislative function and engraft onto section 421.301(9), Stats., the new Uniform Commercial Code provisions.

[9] The "sensible alternative" factor often requires an analysis of the others: if the option price is minimal when compared to either the cost of the goods, their fair market value, or what has already been paid for their use, the "economic reality" is that no lessee in a "right mind" would "fail to exercise the purchase option." *Burton*, 128 B.R. at 813. This is especially true where, as here, the lessee is using the rental payments to purchase the property.

Center was a "consumer credit sale," as the term is defined by section 421.301(9), Stats.

There is no evidence in the record as to what the fair market value of the washer and dryer was at the end of the nineteen-month lease term. We thus have no way of pegging that value.[10] The record tells us, however, that in order to be in "full compliance with the terms of the agreement," sec. 421.301(9), Stats., Hall would have had to pay $1481.24 for the appliances over the nineteen-month period. $161.91 is "nominal" when compared to that sum.[11] Although the $161.91 is not "nominal" when compared to the only original value given for the washer and dryer in the record—Hall's estimate of what comparable products would have cost from more traditional outlets—it is clear on this record at least that anyone seeking to purchase the appliances, as was Hall, and who has paid $1481.24 already, would have "no sensible alternative" but to pay an additional $161.91 to become their owner.

*By the Court.*—Judgment affirmed.

SCHUDSON, J. (*concurring*). Given the uncertain facts of this case, I discern no basis to conclude that

[10] We may not estimate their value based on our own personal experiences. *See In re the Estate of Friedli,* 164 Wis. 2d 178, 189-190, 473 N.W.2d 604, 608 (Ct. App. 1991) (judge's personal knowledge improper basis for judicial notice).

[11] Rent-A-Center argues that its cost of repairing and, if necessary, replacing the washer and dryer if they malfunctioned was included in the monthly rental fee. There is no evidence in the record, however, of any value for this service. It may very well be that if the cost of Rent-A-Center's obligation to repair and replace defective merchandise was significant so that the rental payments reflected use rather than purchase the result of this case might be different.

Hall had "no sensible alternative" but to pay $161.91 for the washer/dryer, or that, on any other basis, $161.91 is "nominal."

Tracing the factors mentioned by the majority, *see* majority op. at 255, we see that this record reveals very little information about: (1) the original price of the goods; (2) the fair market value of the goods nineteen months later; and (3) the *relationship* between the option price and the original price or the fair market value. In fact, although we do know the total rental payments, even the *relationship* between the option price and the rental payments remains very much in doubt without information about what percentage of rental went to the maintenance and other ancillary services for which Hall and Rent-A-Center contracted.

Even using Hall's estimate that "a washer and dryer should cost no more than approximately $600," *see id.* at 247, the record reveals nothing further about: (1) how much less than $600 this washer/dryer would have cost; and (2) how much this washer/dryer was worth after nineteen months (even if worth as much as $600 originally). Without this information, as well as information about the cost of new and used washer/dryers, comments on Hall's "sensible alternatives" are purely speculative. Indeed, depending on facts absent from this record, paying $161.91 for this nineteen month old washer/dryer might have been a most foolish alternative.

Nevertheless, I concur in the result because, unlike the majority, I believe that the record adequately supports the trial court's conclusion: "On its face, as modified, the contract appears to indicate that upon payment of 21 installments of rent Ms. Hall

257

gained ownership and the transaction is clearly a consumer sale . . . ."