Cassandra **BURNEY,** Dorothy J. **Kelsey,** and Gregory A. **Stevenson,** on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**THORN AMERICAS, INC.,** a Delaware corporation; **Thorn EMI North America Holdings Inc.,** a Delaware corporation, Defendants.

Civil Action No. 94–C–1162.

United States District Court, E.D. Wisconsin.

June 27, 1997.

---

William P. Dixon, Sarah E. Siskind, Davis, Miner, Branhill & Galland, Madison, WI, Seymour J. Mansfield, Mansfield & Tanick, Minneapolis, MN, Stephen E. Meili, Madison, WI, David Ramp, Mid–Minnesota Legal Assistance, Minneapolis, MN, for Plaintiffs.

Stephen L. Morgan, Catherine Furay, Murphy & Desmond, Madison, WI, John C. Dods, Dennis Dow, Shannon Spangler, Shook, Hardy & Bacon, Kansas City, MO, Matthew J. Flynn, Katherine H. Grebe, Quarles & Brady, Milwaukee, WI, Janice M. Symchych, Dorsey & Whitney, Minneapolis, MN, for Defendants.

## DECISION AND ORDER GRANTING MOTION TO RECONSIDER IN PART

REYNOLDS, District Judge.

In this consumer class action, Rent–a–Center (which is owned by Thorn Americas, Inc.) allegedly uses rent-to-own agreements that violate the Wisconsin Consumer Act, Wis. Chs. 421–427, the Federal Truth in Lending Act, and Wis. Stat. § 138.04. This order assumes familiarity with the court's prior orders. *See* December 17, 1995 Decision and Order; March 8, 1996 Decision and Order; October 9, 1996 Decision and Order; and October 29, 1996 Decision and Order (944 F.Supp. 762 (E.D.Wis.1996)).

On October 29, 1996, the court modified the class and granted partial summary judgment in favor of the plaintiffs on the following grounds: (1) the rent-to-own transactions were consumer credit sales under the Wisconsin Consumer Act; (2) the reinstatement fee was a delinquency fee as defined by Wis. Stat. § 422.203(1); (3) Thorn Americas, Inc. ("Rent–a–Center") violated the Wisconsin Consumer Act; (4) the measure of actual damages is the difference between the actual finance charge and the 5% per annum rate allowed by § 138.04; and (5) the amount financed is equal to the retail price.

Neither party moved for summary judgment on the federal Truth–in–Lending Act claim, and the court had denied, without prejudice, Rent–a–Center's motion for summary judgment on the § 138.04 Wisconsin claim. (*See* Mar. 8, 1996 Decision and Order.) Therefore, those two liability issues remained.

In the October 29, 1996 Decision and Order, the court asked the parties to submit status reports. In addition to the reports, the parties also filed a slew of motions. Rent–a–Center moved for reconsideration, to stay issuance of an injunction, for summary judgment on the federal Truth–in–Lending Act claim, for class decertification, and for an order denying a Rule 23 damages class. On December 3, 1996, Rent–a–Center moved for class communications. The plaintiffs moved for injunctive relief and for partial summary judgment on class damages.

In the motion for reconsideration, Rent–a–Center makes multiple arguments with multiple subparts. Given the extraordinary standards for reconsideration, most of these arguments are nothing more than static, obfuscating the one legitimate issue Rent–a–Center has raised. In the October 29, 1996 Order, the court misunderstood the implications of a customer's decision to choose to pay the option price in installments. Therefore, the court now vacates its ruling that, as a matter of law, the rent-to-own transactions are consumer credit transactions under the Wisconsin Consumer Act. The court also vacates its ruling that Rent–a–Center has violated the Wisconsin Consumer Act. In all other respects, the court denies the motion to reconsider.

Because the court has granted the motion to reconsider, most of the other pending motions are no longer ripe. The court, however, denies the motion for communications with potential class members.

## I. MOTION TO RECONSIDER

██ Motions to reconsider serve a limited purpose; generally, the appellate court fixes the trial court's errors. A trial court should grant a motion to reconsider only if there is newly discovered evidence or a manifest error of law. *Caisse Nationale De Credit Agricole v. CBI Indus. Inc.*, 90 F.3d 1264, 1269 (7th Cir.1996). Evidence is newly discovered if the party did not know about the evidence and could not have known about it even if it had exercised due diligence. *Id.* at 1270. Parties who forgot to present evidence or who belatedly realize that evidence is important have failed in their responsibility, and a motion to reconsider provides no relief. Parties who intentionally withhold evidence are sandbagging and must live with the original decision. *Id.*

██ A manifest error of law is similarly narrow, applying only to egregious legal errors. Appeal, not reconsideration, is the time to deal with the majority of legal errors; therefore, a party may not reargue what the court has already rejected. *Id.* Similarly, summary judgment, not reconsideration, is the time for a party's best legal argument; therefore, a party may not make arguments that it could have raised in the original summary judgment motion. *Id.* In other words, manifest legal error is the narrow path between the Skylla of arguments already raised and the Kharybdis of arguments that could have been made. *See* Homer, *The Odyssey*, book 12, ll. 75–140 (Robert Fitzgerald trans. 1961).

██ Manifest errors are errors so obvious that no additional explanation is needed or possible. For example, if a court on summary judgment refused to draw a reasonable inference in favor of a nonmoving party, the court's error would be manifest: no explana-

tion of the error would be necessary or possible (besides stating that the court violated the rules of summary judgment).

### A. The Court's Interpretation of "Pays"

██ Most of Rent–a–Center's arguments satisfy neither the newly discovered evidence standard nor the manifest error of law standard. For the Wisconsin Consumer Act claim, the central issue is whether the rent-to-own transactions are consumer credit sales under Wis. Stat. § 421.301(9). A Wisconsin Appellate court has held that a transaction may be a consumer credit sale even if the customer is not obliged to make payments. *Palacios v. ABC TV & Stereo Rental*, 123 Wis.2d 79, 89, 365 N.W.2d 882, 887 (Ct.App.), *rev. denied*, 122 Wis.2d 783, 367 N.W.2d 223 (1985). In the October ruling, this court followed *Palacios*. On reconsideration, Rent–a–Center argues that the court's interpretation of the Wisconsin Consumer Act is unconstitutional. If this court's interpretation is unconstitutional, *Palacios*'s interpretation was unconstitutional, and Rent–a–Center should have raised the argument in its original summary judgment motion. Rent–a–Center has waived the argument.[1]

Rent–a–Center also rehashes the arguments it originally raised for rejecting *Palacios*, arguments the court examined at length. (*Compare* Defs.' Br. for Reconsideration at 13–14 and 15–16 *with* Oct. 29, 1996 Decision and Order at 10–16.) Rent–a–Center argues that the court misunderstood its interpretation of the word "pays." In Rent–a–Center's view, a down payment is separate from the agreement to pay, and "pays" covers the down payment and "agreement to pay" covers the rest of the transaction. Rent–a–Center's view requires an unreasonable interpretation of "agreement to pay." Therefore, the court rejects this argument as well.

### B. Court's Interpretation of the Safe–Harbor Provision

Rent–a–Center also argues that this court's interpretation of the safe-harbor provision violates the constitutional prohibition

---

1. By finding that Rent–a–Center waived this argument, the court in no way is questioning the   constitutionality of *Palacios*.

against *ex post facto* laws. In the court's view, it interpreted the plain meaning of the statute. Moreover, the safe-harbor provision is relevant only if Rent–a–Center's option price is an actual option price. If the option price is a sham, Rent–a–Center has not complied with the Banking Commissioner's letter.

### C. Court's Damage Formula

On the damage measure, the court decided that Rent–a–Center had failed to produce evidence on market rate and, therefore, the measure of damages was the actual interest rate less the 5% allowed by § 138.04. Rent–a–Center is correct that the court misconstrued the scope of the motion; the plaintiffs asked only for a damage formula. Nevertheless, based on the Court's March 8, 1996 Decision and Order, and the reasoning in the October 29, 1996 Decision and Order, the court holds that the appropriate damage measure is the actual finance charge minus the 5% allowed by § 138.04.

Rent–a–Center also claims that the Truth–in–Lending Act preempts the WCA's definition of damages. Rent–a–Center should have made this argument in the initial motion. Rent–a–Center knew that the plaintiffs were relying on the damage measures and definitions in the WCA. The court adopted those measures; therefore, Rent–a–Center waived its right to raise the preemption argument.

### D. Whether the Option Price is Real or a Sham

#### 1. Court's Decision

▮ To be a consumer credit sale, the customer must pay or agree to pay an amount equal to (or greater than) the value of the goods and have the chance to become owner for no (or a nominal) additional consideration. The no or nominal additional consideration requirement is called the option price. The court ruled that Rent–a–Center's option price was a sham because nothing changed between the time before and after the customer exercised the option. Before the customer exercised the option, the customer paid weekly (or bi-weekly or monthly) payments for the use of the goods. If the customer decided to exercise the option, the customer could pay the option price in its entirety, continue making the same periodic payments, or make a series of payments larger than the periodic payments the customer had been making. In the court's understanding, the customer, even after exercising the option to own, had no obligation to pay, which I now believe to be wrong as the customer who chooses to pay the option price in installments has a legal obligation, to pay the entire amount.

#### 2. Rent–a–Center's Objection

Rent–a–Center argues that the court was mistaken about the customer's lack of obligation. After exercising the option to own, the customer has an obligation to pay the option price, whether in a lump sum or in installments. Rent–a–Center correctly concludes that the court mistakenly held that the option price is, as a matter of law, a sham.

#### 3. Implication of Rent–a–Center's Argument

A substantial option price combined with the obligation to pay that price distinguishes a true rental agreement from a disguised sale. If the customer becomes obliged to pay after exercising the option and if the option price is large, the payments before the option date are just rent payments for the use of the goods. For example, a person rents an apartment on a month-to-month lease of $1,000. For ten years, the renter pays the rent; then, the owner decides to sell the units as condominiums. The renter can purchase the condominium for $70,000, its fair market value. Although the renter has paid $120,000 in rent, those payments do not change the choice the renter is now facing: either (1) become obliged to pay $70,000 for ownership or (2) terminate the transaction. Similarly, if a customer has made weekly installments whose total is double the item's original price and if the option price is twice the fair market value, the customer can have no expectation that the payments prior to the option date were anything but rent payments.

By contrast, if terminability remains during the option period, the option price is meaningless. The customer can keep making payments and eventually own the item. Rather than marking a change in the transaction, exercising the option just marks a period of time within a transaction. There is no reason for the customer to end the transaction. In other words, if there is obligation after the customer exercises the option, the transaction is really two transactions: a rental transaction until the customer exercises the option and a sale after the customer exercises the option.

### 4. Rent–a–Center Motion to Reconsider and the Summary Judgment Record

How did the court miss a fact clearly, central to its analysis and Rent–a–Center's argument? The summary judgment factual record precluded such a finding, and Rent–a–Center never argued that obligation differentiated the rental period from the option period. In the court's decision, it stated: "The customer has no legal obligation to continue making the payments; rather, the customer can stop making payments and return the item." (Oct. 29, 1996 Decision and Order at 5.) Within the same paragraph, the court further stated: "If the customer does not make rental payments, the transaction is terminated, whether the customer is making rental payments or payments on the option price." (*Id.*) The court made this finding based on plaintiffs' December 8, 1995[2] proposed finding of fact # 42: "It [Rent–a–Center] also treated the return of merchandise during the option period in the same way as it had treated merchandise returns during the rental period." Rent–a–Center did not dispute the fact, although it pointed out that returns during the option period were rare. (Defs.' Jan. 25, 1996 Resp. to Pls.' Prop. Findings of Fact ¶ 42). If Rent–a–Center treated returns during the option period the same as returns during the rental period, customers must not have been obliged to make the option payments; rather, they could just return the item. Nor did Rent–a–Center's additional facts include any mention

of a customer's having a legal obligation to make the installment option payments.

Rent–a–Center's citation in its motion for reconsideration exemplifies this problem. It cites its summary judgment appendix, not proposed findings or responses. (*See* Defs.' Br. for Recons. at 18.) The trial court, however, has no obligation to search through a party's submission, culling facts, the party neither emphasized nor mentioned. *Northwestern Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662 (7th Cir.1994). Furthermore, the cited reference itself is far from clear: "You're not required to make this payment [the option price] unless you choose to buy the property. You may allow the agreement to expire at the end of any weekly or monthly term." (Defs.' Summ. J. App. Ex. 9 ¶ 12.) The sentence says nothing about the customer being able to pay the option price in installments, but Rent–a–Center admits that it allows customers to pay the option price in installments, and it tells the customers that they can pay the option price in installments when the transaction begins (when the customer signs the rental agreement). (*See* Oct. 29, 1996 Decision and Order at 5.) If a customer may allow the agreement to terminate at the end of any weekly term and if the customer may pay the option price in weekly terms, ¶ 12 does not necessarily mean that a customer paying the option price in installments is legally obligated to make the payments. The court has examined ¶ 12 here only to show that, in the context of the summary judgment record, ¶ 12 did not explicitly say that the customer was obliged to make payments after exercising the option.

If the creation of an obligation to pay was the critical difference between the rental and option periods, one would have expected Rent–a–Center to have raised the argument in its brief. In 11 pages of argument, however, Rent–a–Center never says that exercising the option to own, triggers an obligation to pay. What makes the omission more surprising is that the plaintiffs were arguing that the option price was a "sham"; legal obligation would be a direct refutation of the

plaintiffs' argument. For some reason, Rent–a–Center failed to include this information in its proposed findings and failed to explicitly argue the distinction it now says is "the most fundamental difference" between the option period and the rental period.

Based on the summary judgment record, especially Rent–a–Center's admission to the plaintiffs' proposed finding # 42 and its failure to raise the argument, the court would be fully within its power to deny the motion to reconsider. When parties choose to litigate every possible issue and then fail to adequately present a major argument, they should live with the consequences. If this was a purely private suit, Rent–a–Center would have to live with these consequences. This action, however, is a class action that seeks injunctive relief that will change the marketplace. Before the court will order a party to take certain market-wide actions (or refrain from other actions), it must make sure it understands what is actually happening-in the marketplace. Therefore, the court will vacate the October 29, 1996 Decision and Order only on the issue of whether Rent–a–Center's option prices are nominal.

### 5. Implications of Granting the Motion to Reconsider

On the record before the court, it can grant summary judgment to neither party. On the one hand, Rent–a–Center argues that the option prices are real because the customer becomes obliged to make payments. What began as a rental agreement becomes a sales agreement. The change, assuming the option price itself is substantial,[3] forces the customer to make a choice: whether to continue renting (without buying), to become obliged to pay and eventually own the item (by lump sum or installments), or to end the transaction. Purchasing with the responsibility of obligation is a new choice; therefore, the option price is not a sham.

Even if the option is not a sham, the rent-to-own transaction could still be a consumer credit sale if the option price is nominal. This determination is fact-specific and may preclude a class action. Based on Wisconsin law, the court determines nominality by comparing the option prices to the fair market value, the retail price, and the total payments. In addition, the court must determine whether the customer has any real alternatives to exercising the option. Rent–a–Center uses a formula for the retail price, the option price, and the total payments. Fair market value, however, cannot be determined on a class-wide basis. Different items depreciate at different rates, and the customer's wear-and-tear on an individual item may make it depreciate faster or slower than the item generally does. Moreover, to examine whether the customer has alternatives, the court has to know about the resale market for the product; the availability of similarly used merchandise, in all likelihood, differs from product to product.

The plaintiffs continue to argue that the court can resolve the issue in their favor on the current record. In their view, the existence of legal obligation is a red herring because Rent–a–Center never uses it; instead, Rent–a–Center treats returns during the option period like any other return. At the least, this is a factual dispute that the court cannot resolve. Nor is summary judgment in Rent–a–Center's favor appropriate because Rent–a–Center has never moved for summary judgment on the WCA claim (except for a motion dealing with the safe-harbor provisions).

Second, neither party has addressed a relevant legal issue: whether, as a matter of law, the obligation is enforceable. As Rent–a–Center admits, once the customer decides to exercise the option payment, the installment sales agreement is a consumer credit sale under the WCA. Under the WCA, a customer may voluntarily surrender the item, § 425.204(1). If the amount due is less than $1,000 and if the merchant has repossessed the item or accepted voluntary surrender, the merchant may not collect the balance due at the time of default. § 425.209. Apparently, the WCA gives customers the terminability that Rent–a–Center claims does not exist in their installment sales agreements. Because neither party has discussed this issue and

---

**3.** To avoid application of the WCA, the option price must not be nominal. Rather than use a double negative, the court uses the phrase substantial to mean not nominal.

because the court has an insufficient factual record to decide whether the option prices are always less than $1,000, it cannot resolve this issue at this time.

## II. Other Motions

Based on the status of the case, most of the other pending motions are no longer ripe. Issues about decertification, injunctions, and damages can wait. The court denies those motions without prejudice.

## III. Motion for Class Communication

■ Rent–a–Center's motion for class communication is disturbing because it represents a shift in the tenor of this litigation from aggressive advocacy to abusive litigation. On December 3, 1996, Rent–a–Center made an expedited motion to contact class members. Local Rule 6.07 controls expedited motions and requires the moving party to submit an affidavit showing that a good faith attempt was made to resolve the dispute. Because Rent–a–Center did not comply with Local Rule 6.07, the court treated it as a routine motion.

Rent–a–Center has two reasons for wanting to contact class members. First, one of the plaintiff's attorneys told the media that 16,000 Rent–a–Center customers would receive over $20 million. Further, he said he was disappointed that Rent–a–Center would consider appealing the judgment. In Rent–a–Center's view, the attorney's comments inappropriately encouraged eligible customers to join the class. Second, Rent–a–Center claimed that plaintiffs' attorneys were contacting class members and telling them not to pay their installments and to keep the item. Rent–a–Center wants the court to require parties to contact class members only, in writing, and to have the court approve those communications.

As to the statements to the press, they are a non-issue. First, the court doubts whether the proposed order would cover them. Second, the attorney's statement is no different than Rent–a–Center's statement that it expects to win the appeal. Third, the problem is Rent–a–Center's wish to avoid giving notice to putative class members. If notice had been sent earlier in the action, potential class members would have either opted-out of the class or joined it already. If the parties had sent out notice when the court certified the class, this issue would not have occurred.

As to the second argument, Rent–a–Center has not met its burden. It relies on double hearsay for its attacks on the ethics and integrity of another lawyer. Apparently, it did not confront the attorney first, nor did it ask the court for the limited opportunity to investigate the allegations. Even in an adversarial system, the parties—and especially their attorneys—must respect each other; to disparage an attorney's ethics based on double hearsay is close to frivolous.

## IV. STATUS OF THE CASE

Throughout this case, the parties have largely ignored the Truth–in–Lending Act claim. Finally, after the Court's October 29, 1996 Decision and Order, Rent–a–Center moved for summary judgment, which was nearly a year after the dispositive motion deadline.

The plaintiffs have 30 days from the date of this order to respond to Rent–a–Center's motion for summary judgment on the federal Truth–in–Lending Act claim.

Until the court decides the summary judgment motion on the federal claim, neither party shall file any motions relating to any of the state claims.

## V. CONCLUSION

The court **grants** the motion to reconsider only as follows. The court vacates its ruling that the option prices are a sham, that the transactions, as a matter of law, are consumer credit sales under the Wisconsin Consumer Act, and that Thorn Americas, Inc., violated the Wisconsin Consumer Act.

As to all other issues, the court **denies** the motion to reconsider.

The court **accepts** all briefs that have been filed as timely.

The plaintiffs have 30 days to file a response to Thorn Americas, Inc.'s summary judgment motion on the Truth–in–Lending Act claim. Thorn Americas, Inc., will have

15 days from the date of service to file its reply brief.

The court **denies** all other motions without prejudice.

The parties will make no motions regarding any state law claims until the court decides the summary judgment motion involving the Truth–in–Lending Act claim.

The court **denies** the motion for communication with class members.

The court **dismisses** Thorn EMI North America Holdings, Inc., because there are no remaining claims against it.